UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Conservation Law Foundation, Inc. | ) |
| | ) |
| | ) Case No. _____ |
| Plaintiff, | ) |
| | ) **COMPLAINT FOR** |
| | ) **DECLARATORY AND INJUNCTIVE** |
| | ) **RELIEF AND CIVIL PENALTIES** |
| v. | ) |
| | ) July 25, 2016 |
| Continental Paving, Inc. | ) |
| d/b/a Concord Sand & Gravel | ) |
| | ) (Federal Water Pollution Control Act, |
| Defendant. | ) 33 U.S.C. §§ 1251 to 1387) |
| | ) |

**INTRODUCTION**

1.      This is a civil suit brought under the citizen suit enforcement provisions of the

Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act,"

"the Act," or "CWA").  Plaintiff Conservation Law Foundation, Inc. ("Plaintiff" or

"CLF") seeks declaratory judgment, injunctive relief, and other relief the Court deems

proper to remedy Defendant Continental Paving, Inc.'s violations of the Clean Water Act,

which include past and ongoing unauthorized discharges of polluted stormwater and

process waste water associated with industrial activities at its construction sand and

gravel facilities in Concord and Pembroke, New Hampshire into waters of the United

States, and failure to comply with applicable U.S. Environmental Protection Agency

("EPA") National Pollutant Discharge Elimination System ("NPDES") permits, including

the Multi-Sector General Permit for Stormwater Discharges Associated With Industrial

1

Activity ("Multi-Sector General Permit" or "MSGP") and the individual NPDES permit that is required for discharges of process wastewater.

2.      Section 301(a) of the Clean Water Act makes "the discharge of any pollutant by any person [...] unlawful" except when in conformance with enumerated statutory provisions, including the requirement that a discharge obtain and comply with a NPDES permit under Section 402 of the Act. *See* 33 U.S.C. §§ 1311(a), 1342.

3.      Stormwater discharged from industrial activities require a NPDES permit. EPA has specifically acknowledged that when stormwater or snowmelt comes into contact with activities at industrial facilities, the runoff picks up pollutants and transports them to nearby storm sewer systems or to rivers, lakes, or coastal waters. Therefore, EPA's NPDES program includes the MSGP that covers 29 categories of industrial activity. Discharges of process wastewater, such as water resulting from washing gravel and crushed stone piles and spraying water on rock crushing and sorting machinery, are not covered by the MSGP and therefore require coverage under an individual NPDES permit.

4.      Defendant, under the trade name "Concord Sand and Gravel," has operated and continues to operate a construction sand and gravel facility located at 320 Sheep Davis Rd., Concord, NH 03301 and a construction sand and gravel and asphalt paving mixtures facility located at 822 Ricker Rd., Pembroke, NH 03275 (hereinafter the "Concord Facility," the "Pembroke Facility," and, collectively, the "Facilities"), and, upon information and belief, engages in industrial activities including mining, storing, moving, and processing sand, gravel, and other earth materials outdoors or in a manner otherwise exposed to the elements; operating and storing heavy machinery and equipment outdoors; and driving vehicles on and off of the Facilities. In addition, the

2

Pembroke Facility engages in manufacturing hot mix asphalt and materials associated with its production.

5.      Upon information and belief, Defendant also uses water which, during manufacturing or processing, comes into direct contact with or results from the production or use of raw material, intermediate product, finished product, byproduct, or waste product.

6.      Defendant's industrial activities fall within enumerated categories of industrial activity subject to the Multi-Sector General Permit. These activities generate stormwater pollution that is collected, channeled, and conveyed into the Soucook River, a water of the United States.

7.      Upon information and belief, Defendant's use of water in its industrial processes, including but not limited to washing gravel and crushed stone and spraying water on rock crushing and sorting machinery and the manufacture of hot mix asphalt, generates process wastewater.  The discharge of process wastewater cannot be covered under the Multi-Sector General Permit and can only be permitted under an individual NPDES permit, so Defendant's past and on-going discharges of process wastewater can only be authorized by an individual NPDES permit.

8.      Defendant's industrial activities generate stormwater pollution that is collected, channeled, and conveyed into the Soucook River and, at the Concord Facility, into a tributary to the Soucook River, both of which are waters of the United States within the Merrimack River watershed. The Soucook River flows into the Merrimack River and thereafter into the Atlantic Ocean, which are also waters of the United States.

3

9.  Defendant's past and ongoing discharges of stormwater associated with industrial activity have not been, and are not, authorized by an individual NPDES permit or the applicable MSGP, including the 2008 or 2015 MSGP.

10.  Defendant's past and on-going discharges of process wastewater have at no time been authorized by an individual NPDES permit.

11.  Defendant has operated, and continues to operate, its Facilities in violation of the Clean Water Act.

## JURISDICTION AND VENUE

12.  Plaintiff brings this civil suit under the citizen suit enforcement provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365.  This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. § 1331 (an action arising under the Constitution and laws of the United States).

13.  On May 25th, 2016, Plaintiff notified Defendant of its intention to file suit for violations of the Clean Water Act, in compliance with the statutory notice requirements under Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2.  Plaintiff sent Defendant separate notice letters for the Concord Facility and Pembroke Facility. True and accurate copies of Plaintiff's notice letters are appended to this complaint as Exhibits A and B.

14.  More than sixty days have elapsed since Plaintiff served the notice letters on Defendant, during which time neither the EPA nor the State of New Hampshire has commenced a court action to redress the violations alleged in this complaint.  33 U.S.C. § 1365(b)(1)(B).

15.     Venue is proper in the U.S. District Court for the District of New Hampshire pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

**PARTIES**

16.     Plaintiff CLF is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment. It is incorporated under the laws of Massachusetts with an office at 27 North Main Street, Concord, NH, 03301, and a principal place of business at 62 Summer Street, Boston, MA, 02110. CLF has over 3,000 members, including more than 450 members in New Hampshire. CLF has long worked to protect the health of New England's waterways, including addressing the significant water quality impacts of stormwater pollution. CLF members use and enjoy New England's waterways for recreational and aesthetic purposes, including boating, swimming, fishing, hunting, and sightseeing, including but not limited to waters of the United States affected by Defendant's unpermitted discharges of pollutants. CLF actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

17.     Defendant's unauthorized discharges of pollutants into surface waters, wetlands, tributary streams, the Soucook River, the Merrimack River, and downstream receiving waters adversely affect CLF members' use and enjoyment of those water resources. The interests of CLF's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act and the National Pollutant Discharge Elimination System. The relief sought in this action will redress these harms. The unlawful acts and omissions described herein have and will continue to

irreparably harm Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

18.     Defendant Continental Paving, Inc. (d/b/a Concord Sand & Gravel) is a corporation in good standing, organized under the laws of New Hampshire, and with a principal place of business at 1 Continental Drive, Londonderry, NH 03053. Mark Charbonneau is the president of Concord Sand & Gravel and Continental Paving, Inc., and Morgan A. Hollis is Defendant's registered agent.  Defendant operates a construction sand and gravel facility located at 320 Sheep Davis Rd., Concord, NH 03301 and a construction sand and gravel and asphalt paving mixtures facility located at 822 Ricker Rd., Pembroke, NH 03275. Defendant maintains, operates, and is responsible for industrial activities at the Facilities.

## STATUTORY AND REGULATORY BACKGROUND

19.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States from a point source, unless the discharge complies with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

20.     Section 502(14) of the Clean Water Acts defines "point source" broadly to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *See* 33 U.S.C. § 1362(14).  Under the regulations

6

implementing the Clean Water Act, the definition of "discharge of a pollutant" includes "additions of pollutants into waters of the United States from: surface runoff which is collected or channelled by man [.]" 40 C.F.R. § 122.2.

21.    In 1987, Congress amended the Clean Water Act to require that facilities engaged in certain industrial activities obtain stormwater discharge permits. Water Quality Act of 1987, Pub. L. No. 100-4, § 405, 101 Stat 7 (1987); *see* 55 Fed. Reg. 47990, 47991-93 (Nov. 16, 1990).  Accordingly, Section 402 of the CWA directed the EPA to develop a phased approach for regulating stormwater discharges under the NPDES permitting program.  33 U.S.C. §§ 1342(a)(1), 1342(p)(2), 1342(p)(3)(A), 1342(p)(4), 1342(p)(6).

22.    In 1990, in furtherance of the requirements of Section 402, the EPA promulgated regulations, set forth at 40 C.F.R. § 122.26, requiring regulated industrial dischargers to submit applications for NPDES permit coverage no later than October 1, 1992.  In establishing these regulations, EPA relied upon significant data showing the harmful effects of stormwater runoff on rivers, streams, and coastal areas across the nation. In particular, EPA found that runoff from industrial facilities contained elevated pollution levels. 55 Fed. Reg. 47990, 47991 (Nov. 16, 1990).

23.    In September 1995, EPA issued a NPDES Storm Water Multi-Sector General Permit for Industrial Activities. EPA reissued the MSGP in October 2000, 65 Fed. Reg. 64746, in September 2008, 73 Fed. Reg. 56572, and most recently in June 2015. 80 Fed. Reg. 34,403.

24.    To discharge stormwater lawfully, industrial dischargers like Defendant who operate facilities subject to regulation must obtain coverage under the Multi-Sector

7

General Permit and comply with its requirements or obtain coverage under an individual NPDES permit.

25.    Under the MSGP, industrial dischargers must file with the EPA a complete and accurate notice of intent ("NOI") to be covered by the MSGP and develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") identifying and controlling sources of pollutants associated with industrial discharges from the subject facility.

26.    The 2015 MSGP required each subject facility to file its NOI for coverage by September 2, 2015.

27.    The permit has several key changes from the prior MSGP, including but not limited to, requiring disclosures in the NOI to be in electronic format, increasing the amount of detail regarding stormwater outfalls and receiving waters that a discharger must include in its NOI to receive permit coverage, and modifying effluent limitation requirements, inspections, corrective actions and other industry-specific requirements.

28.    Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation."

29.    Such enforcement action under CWA Section 505(a) includes an action seeking remedies for unauthorized discharges in violation of Section 301 of the Clean Water Act, 33 U.S.C § 1311, as well as for failing to comply with one or more permit conditions in violation of Sections 402 and 505(f) of the Act, 33 U.S.C. §§ 1342, 1365(f).

30.    Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for all violations occurring from January 12, 2009

through November 2, 2015, and $51,570 for penalties that are assessed on or after August 1, 2016, for violations that occurred after November 2, 2015. *See* 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1–19.4; https://www.federalregister.gov/articles/2016/07/01/2016-15411/civil-monetary-penalty-inflation-adjustment-rule#h-22

## FACTS

31.     Upon information and belief, since at least 2010 Defendant has operated, and continues to operate, a construction sand and gravel facility at 320 Sheep Davis Rd., Concord, NH 03301 (Concord Facility) and a construction sand and gravel and asphalt paving mixtures facility located at 822 Ricker Rd., Pembroke, NH 03275 (Pembroke Facility).

32.     The primary activities at the Facilities, construction sand and gravel (Standard Industrial Classification Code 1442), crushed and broken stone (Standard Industrial Classification Code 1423), and asphalt paving mixtures (Standard Industrial Classification Code 2951), are among the sectors of industrial activity covered by the Multi-Sector General Permit (*see* 2015 Multi-Sector General Permit Appendix D, Sector J), and the activities listed in 40 C.F.R. § 122.26(b)(14).

33.     Upon information and belief, Defendant has engaged and continues to engage in the following industrial operations at the Facilities: mining, storing, moving, and processing sand, gravel, rock and other earth materials (including overburden, raw material, intermediate product, finished product, byproduct, and waste product) outdoors or otherwise exposing such sand, gravel, rock and other earth materials to the elements; stockpiling, processing, storage and transfer of asphalt materials outdoors; operating,

maintaining, and storing heavy machinery and equipment outdoors; and driving trucks and other vehicles on and off the Facilities *via* driveways and immediate access roads. Defendant's processing of its sand, gravel, and rock products, upon information and belief, includes washing those products with water.

34. The earth material piles and areas of industrial activity at the Facilities are uncovered, and therefore exposed to precipitation. Upon information and belief, the earth material piles also are subject to being sprayed-down with water during certain conditions.

35. Upon information and belief, the sources of pollutants associated with the industrial activities at the Facilities include, but are not limited to: sand, gravel, rock and other earth materials; hot mix asphalt and materials involved in its production; gravel mining and processing machinery and equipment; vehicles; shipping and receiving areas; loading and unloading areas; maintenance areas; and onsite re-fueling of machinery.

36. Upon information and belief, pollutants present in stormwater discharged from the Facilities include, but are not limited to: dust, total suspended solids, total dissolved solids, fines, hydrocarbons (oil, grease, fuel), heavy metals, sediment, road salt (which in turn contains chlorides, sodium and impurities), trash, and other pollutants associated with the Facilities' operations.

37. EPA considers precipitation above 0.1 inches during a 24-hour period a measurable precipitation event.  40 C.F.R. § 122.26(c)(i)(E)(6).

38. The 2015 Multi-Sector General Permit specifically references snowmelt as a form of stormwater discharge that must be addressed by a discharger in its control measures. 2015 Multi-Sector General Permit Part 2.1.2.1.

39.    Upon information and belief, during precipitation events and instances of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Facilities, generating stormwater runoff associated with the Facilities' industrial activity.

40.    Upon information and belief, stormwater runoff from the Facilities has been and continues to be conveyed by the operation of gravity *via* site grading, surface water channels, subsurface hydrological connections, detention ponds, pipes, and other conveyances to the Soucook River and its associated tributaries and wetlands and downstream receiving waters, including the Merrimack River. This runoff carries pollutants from several sources, including but not limited to: sand, gravel, and earth material piles that are open to the elements; machines and equipment left outdoors; and vehicles driven on and off the Facilities.

41.    At the Concord Facility, upon information and belief, Defendant has redirected an unnamed tributary of the Soucook River. This tributary to a traditional navigable water (hereinafter "Tributary A") is a water of the United States. Tributary A flows in an easterly direction toward the Concord Facility from a surface water-wetland complex located westerly of the Concord Facility. Defendant has directed Tributary A underneath an interior access road, after which Tributary A connects with and carries flow from two small constructed ponds, each approximately forty feet in diameter, within the Concord Facility. Downstream of the constructed ponds, Tributary A flows under another interior access road and into a large constructed pond. This large constructed pond is approximately 800 feet long and 40 feet wide, and is located along the bank of the Soucook River, approximately 35 feet from the Soucook River. Tributary A receives stormwater associated with industrial activity from the Concord Facility while it flows

11

through the Concord Facility. The large constructed pond has an outlet pipe at its northerly end, though which, upon information and belief, it discharges into the Soucook River.

42.    The Soucook River is within the Merrimack River watershed and flows into the Merrimack River, which thereafter flows into the Atlantic Ocean.

43.    The Soucook River, its tributaries and associated wetlands,  and the Merrimack River are "waters of the United States," as defined in 40 C.F.R. § 122.2, and therefore also "navigable waters," as defined in 33 U.S.C. § 1362(7).

44.    The Environmental Protection Agency (EPA) has designated the Soucook River and the Merrimack River as impaired under Section 303(d) of the Clean Water Act.

45.    Upon information and belief, Defendant discharges directly and indirectly into the Soucook River through multiple point source outfalls.

46.    Upon information and belief, process water and stormwater runoff from the Facilities are not treated to remove the pollutants referenced in Paragraph 36, above, before they are discharged into the Soucook River.

47.    Defendant has failed to obtain coverage under the 2015 MSGP, or any other valid NPDES permit for the Facilities.

48.    Upon information and belief, as of July 25, 2016, Defendant  is discharging pollutants in violation of the Clean Water Act as evidenced by the following:

(a)    Defendant has not filed an electronic NOI as required by the 2015 MSGP;

(b)    Defendant has not developed, implemented, and filed with the NOI, a Stormwater Pollution Prevention Plan that meets the requirements of the 2015 MSGP Part 5; and

(c)     Defendant has failed to install and implement control measures to meet numeric and non-numeric effluent limitations in Part 2.1 of the 2015 MSGP.

49.     Accordingly, Defendant is not authorized to discharge from the Facilities under the 2015 Multi-Sector General Permit because it has not met all requirements of Part 1.2 of the 2015 MSGP.

50.     In addition to its unpermitted stormwater discharges, upon information and belief, Defendant's Facilities uses water in industrial processes, including but not limited to washing gravel and crushed stone and spraying rock crushing and sorting machinery.

51.     Upon information and belief, process wastewater from the Facilities is and has been discharged into waters of the United States.

52.     As of July 25, 2016, Defendant does not hold a valid individual NPDES permit authorizing it to discharge process wastewater.

## CLAIMS FOR RELIEF

### First Cause of Action:
### Unauthorized Discharge of Pollutants Into Waters of the United States

53.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

54.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any point source to waters of the United States, except for discharges in compliance with a NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

55.     In order to be authorized to discharge lawfully under the Multi-Sector General Permit, a regulated industrial discharger's facility must meet requirements set forth in Part 1.3.1 of the 2015 MSGP.  These requirements include:

13

(a) Establishing  eligibility for coverage under the permit;

(b) Selecting, designing, installing, and implementing control measures in accordance with 2015 MSGP Part 2.1;

(c) Developing a complete and accurate SWPPP in accordance with the 2015 MSGP's requirements; and

(d) Filing a complete and accurate NOI to seek coverage under the 2015 MSGP.

56. Defendant is an industrial discharger with primary SIC Codes of 1442 and 2951and/or another activity listed under Appendix D of the Multi-Sector General Permit or 40 C.F.R. § 122.26(b)(14), which means Defendant is obligated to apply for coverage under the MSGP or other legal authorization for its Facilities.

57. Defendant's industrial activities at the Facilities have resulted in, and continue to result in, "stormwater discharge associated with industrial activity," within the meaning of 40 C.F.R. § 122.26(b)(14), to waters of the United States on, upon information and belief, every day of precipitation greater than 0.1 inches and every instance of snowmelt.

58. Defendant's discharges of stormwater associated with industrial activity ("industrial stormwater discharges") are discharges of pollutants within the meaning of 33 U.S.C. § 1362(12).

59. Defendant's industrial stormwater discharges at the Facilities are "point source" discharges into waters of the United States.

60. Industrial stormwater discharges at the Facilities have caused and continue to cause discharges of pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

14

61.     Defendant has discharged and continues to discharge industrial stormwater without authorization under a valid NPDES permit as required by CWA Section 301(a), 33 U.S.C. § 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

62.     Each and every day on which Defendant has discharged and continues to discharge industrial stormwater from the Facilities without authorization under a valid NPDES permit constitutes a distinct violation of CWA Section 301(a), 33 U.S.C. § 1311(a) and Section 402 of the CWA, 33 U.S.C. § 1342.

### Second Cause of Action: Failure to Obtain and Comply with an Individual NPDES Permit for Industrial Discharges

63.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

64.     Process wastewater discharges cannot be covered under the MSGP; rather, they require individual NPDES permit coverage.

65.     Defendant is and has been required to obtain permit coverage for the process wastewater discharges from its Facilities by seeking and obtaining an individual NPDES permit, pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

66.     Defendant has failed, and continues to fail, to obtain permit coverage under an individual NPDES permit for process wastewater discharges from its Facilities.

67.     Each and every day on which Defendant has not had individual NPDES permit coverage for its Facilities is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and Section 402 of the Act, 33 U.S.C. § 1342.

### Third Cause of Action: Failure to Obtain a Permit for Industrial Stormwater Discharges

15

68.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

69.     Defendant has been required to obtain permit coverage for its Facilities under at least 2015 MSGP (and earlier iterations of the MSGP, as applicable), or by seeking and obtaining an individual NPDES permit pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

70.     Each and every day on which Defendant has not had general or individual NPDES permit coverage for its Facilities is a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and Section 402 of the Act, 33 U.S.C. § 1342.

**Fourth Cause of Action:**
**Failure to Comply with a Permit for Industrial Stormwater Discharges**

71.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

72.     Regulated industrial discharges are required at a minimum to comply with the requirements of the MSGP, which include but are not limited to:

(a)     Developing and implementing a complete and accurate Stormwater Pollution Prevention Plan;

(b)     Submitting a complete Notice of Intent to be covered by the MSGP, accompanied by a complete and accurate SWPPP;

(c)     Implementing required stormwater control measures;

(d)     Conducting facility inspections in accord with the MSGP (2015 Multi-Sector General Permit Part 3);

16

(e)     Conducting site inspections and submitting the results thereof to EPA

(2015 Multi-Sector General Permit Part 3);

(f)     Monitoring and analyzing stormwater samples consistent with procedures

set forth in the Multi-Sector General Permit, including but not limited to

benchmark monitoring and monitoring for discharges to an impaired water

(2015 Multi-Sector General Permit Part 6 and Appendix B);

(g)     Complying with reporting and recordkeeping requirements, including but

not limited to reporting of any noncompliance during an applicable time

period (2015 Multi-Sector General Permit Part 7);

(h)     Satisfying sector-specific requirements such as requirements pertaining

specifically to construction sand and gravel operations (2015 Multi-Sector

General Permit Part 8, Subpart J);

72.     Defendant has failed, and continues to fail, to comply with the requirements of the

Multi-Sector General Permit, including, upon information and belief, each of the

requirements described above.

73.     Each and every day on which Defendant has failed to comply with the Multi-

Sector General Permit is a separate and distinct violation of Section 301(a), 33 U.S.C.

§ 1311(a), and Section 402 of the CWA, 33 U.S.C. § 1342.

**RELIEF REQUESTED**

73.     Wherefore, Plaintiff respectfully requests that this Court grant the following

relief:

(a)     Declare Defendant to have violated and to be in violation of Section

17

301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for its Facilities' unlawful and unauthorized discharges of pollutants to waters of the United States;

(b)     Declare Defendant to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for its failure to obtain coverage under the 2015 Multi-Sector General Permit for the Facilities;

(c)     Declare Defendant to have violated and to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for its failure to comply with all applicable requirements of the Multi-Sector General Permit for the Facilities;

(d)     Enjoin Defendant from discharging pollutants from the Facilities into waters of the United States except as authorized by and in compliance with a National Pollutant Discharge Elimination Permit;

(e)     Order Defendant to comply fully and immediately with all applicable requirements of the Multi-Sector General Permit for the Facilities;

(f)     Order Defendant to apply immediately for an individual NPDES permit for its Facilities applicable to process wastewater;

(g)     Order Defendant to pay civil penalties of $37,500 per day per violation for all violations occurring from January 12, 2009 through November 2, 2015, and $51,570 for penalties that are assessed on or after August 1, 2016, for violations that occurred after November 2, 2015, 33 U.S.C. §§ 1319(d), 1365(a); 40 C.F.R. §§ 19.1–19.4;

18

> https://www.federalregister.gov/articles/2016/07/01/2016-15411/civil-
>
> monetary-penalty-inflation-adjustment-rule#h-22;

(h)    Order Defendant to take appropriate actions to remedy harm caused by

Defendant's noncompliance with the Clean Water Act;

(i)     Award Plaintiff's costs (including reasonable investigative, attorney,

witness, and consultant fees) as permitted by Section 505(d) of the Clean

Water Act, 33 U.S.C. § 1365(d); and

(j)     Award any such other and further relief as the Court may deem

appropriate.

## JURY DEMAND

Plaintiff does not request a jury trial.

Respectfully submitted this 25ⁿᵈ day of July, 2016,

CONSERVATION LAW FOUNDATION, INC.,

By its attorney,

/s/ Zachary K. Griefen
Zachary K. Griefen, NH Bar No. 265172
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
(802) 223-5992 x4011
zgriefen@clf.org

19