UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Conservation Law Foundation, Inc.

    v.                                 Civil No. 16-cv-339-JL
                                          Opinion No. 2016 DNH 220

Continental Paving, Inc.,
d/b/a Concord Sand & Gravel

**<u>MEMORANDUM OPINION</u>**

"Organizational standing" is a frequently contested issue
in citizen enforcement actions.  In the case at bar,
Conservation Law Foundation (CLF) alleges that Continental
Paving, Inc., (operating under the trade name Concord Sand &
Gravel), violated the Federal Water Pollution Control Act by
discharging polluted water without proper authorization or
permits.  CLF seeks declaratory and injunctive relief, and
imposition of civil penalties.  Continental moves to dismiss the
complaint, arguing that CLF lacks organizational standing to
sue.  Specifically, Continental argues that CLF has failed to
identify any of its members who were harmed by Continental's
alleged activities.  After briefing and oral argument, the court
finds that CLF members have alleged sufficient injury to confer
standing on CLF.  While Continental correctly observes that
CLF's complaint contains no allegations regarding individual
members, declarations from CLF members appended to its objection

to Continental's motion to dismiss satisfy the standing requirement.  The court therefore denies Continental's motion to dismiss.

## I.  Background[1]

CLF is a regional, non-profit environmental protection organization headquartered in Boston.  It has over 3000 members, including more than 450 in New Hampshire.  Continental operates two New Hampshire facilities at issue in this litigation:  a sand and gravel facility in Concord and a sand, gravel and asphalt paving mixtures facility in Pembroke.  CLF alleges that Continental engages in various industrial activities at the facilities, including mining, storing, moving and processing sand, gravel, rock and other earth materials.  CLF further alleges that such sand, gravel, rock and other earth materials are exposed to the elements and are sprayed with water on occasion.  The Complaint also asserts that Continental stockpiles, processes, stores and transfers asphalt materials outdoors; operates, maintains, and stores heavy machinery and equipment outdoors; and drives vehicles on and off the facilities via driveways and immediate access roads.

---

[1] The court has taken the facts from the complaint, except where noted otherwise.

When the materials and equipment at the facilities are
exposed to precipitation and snowmelt, the water becomes
polluted with dust, suspended and dissolved solids,
hydrocarbons, heavy metals, sediment, road salt, trash and other
pollutants from the facilities' operation.  CLF alleges that
this polluted runoff is then conveyed through various means,
e.g., site grading, surface water channels, subsurface
connections and pipes, to the Soucook River, its tributaries and
wetlands, and eventually to the Merrimack River.  CLF also
alleges that at the Concord facility, Continental has redirected
an unnamed tributary of the Soucook River under an on-site
access road, after which the tributary connects with and carries
flow from two small constructed ponds, under another interior
access road, and into a large constructed pond located along the
bank of the Soucook River.  This pond has an outlet pipe that
discharges into the Soucook River, then into the Merrimack
River, and thereafter into the Atlantic Ocean.

After  giving  Continental  the  statutorily-required  60-day
notice of intent to file suit,[2] 33 U.S.C. § 1365(a)(1), CLF filed

---

[2] The Act authorizes "a person or persons having an interest
which is or may be adversely affected," to file suit to enforce
the Act's permitting requirements.  33 U.S.C. §§ 1365(a), (g).
The statute and its implementing regulations impose a notice
requirement on citizen suits requiring a would-be plaintiff to
give notice of the alleged violation to the EPA, the State in

a four-count Complaint, alleging various violations of the Act related to unauthorized pollution discharges from the facilities.

In its objection to the pending motion, CLF submitted the declarations of three CLF members -- Thomas Irwin (who also serves as a vice president and director of CLF), Katharyn Hok and Mark Feigl.  Each of the three describe their own interactions with the Soucook and Merrimack Rivers.  For example, Feigl, a Concord resident, expressed his concern for the cleanliness of water flowing to the Merrimack from the Soucook because he has swum, canoed, hunted for ducks and trained his retrieving dogs there.  Hok, also a Concord resident, stated that she has used the Soucook and Merrimack Rivers for canoeing and swimming.  Irwin described hiking, kayaking and swimming with his children in the Merrimack River. He also described his children's school field trips to study the river.  All three declarants described potential pollution from the Continental facilities as impacting their future enjoyment of the rivers.

---

which the alleged violation occurred, and the alleged violator, at least sixty days before filing a citizen suit.  Id. at § 1365(b)(1)(A).

## II.  **Legal standards**

In considering a motion to dismiss for lack of standing under Rule 12(b)(1), the court "accept[s] as true all well-pleaded factual averments in the plaintiff's complaint and indulge[s] all reasonable inferences therefrom in his favor." Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir.2012) (internal quotation marks omitted).[3]  The court may also consider material outside the pleadings, such as affidavits, to aid in its determination. Gonzalez v. United States, 284 F.3d 281, 287-88 (1st Cir. 2002).  "[A] suit will not be dismissed for lack of standing if there are sufficient allegations of fact . . . in the complaint or supporting affidavits." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 65 (1987) (internal quotations omitted).

---

[3] Defendants refer to Rule 12(b)(1) in the "Conclusion" sections of their original and reply memoranda of law.  They refer to Rule 12(b)(6), however in the body of their arguments. Ultimately, the discrepancy is of no moment, as the court's analytical path is the same under Rule 12(b)(6).  See McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003) ("Normally on a Rule 12(b)(6) motion to dismiss, only the complaint is reviewed.  However, where standing is at issue, it is within the trial court's power to allow or to require the plaintiff to provide by affidavit or amended complaint "further particularized allegations of fact deemed supportive of plaintiff's standing.'") (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975))).

### III. <u>Legal Analysis</u>

To have standing to sue, a plaintiff must have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." Dubois v. U.S. Dep't. of Agric., 102 F.3d 1273, 1280 (1st Cir. 1986) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

"Standing consists of both a constitutional aspect and a prudential aspect.  The constitutional dimension derives from the requirement that federal courts can act only upon a justiciable case or controversy." Id. at 1280-81 (citing U.S. Const. art. III).  "If a party lacks Article III standing to bring a matter before the court, the court lacks subject matter jurisdiction to decide the merits of the underlying case" and must dismiss it. Id. at 1281 (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)).  To satisfy the constitutional aspect of standing, a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Davis v. F.E.C., 554 U.S. 724, 734 (2008) (internal quotations omitted).  The plaintiff must show that "(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural

or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000).

Of particular relevance here, as an exception to the general prudential rule that a party must assert its own legal rights and not those of third parties, an "association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 181.  More particularly, the Supreme Court has held "that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are 'persons for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Laidlaw, 528 U.S. at 183 (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972); citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 562–63 (1992)).

The "relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." Laidlaw, 528 U.S. at 180.  Therefore, some

individualized specificity is required.  For example, in United States v. AVX Corp., 962 F.2d 108, 116-17 (1st Cir. 1992), the Court of Appeals held that the plaintiff's allegations of injury were insufficient where the organization alleged that its "members have been and will continue to be harmed by the releases" at issue in the case, but no organization members were identified, their places of abode were not provided, and "the extent and frequency of any individual use of the affected resources [was] left open to surmise."  Id.  Continental alleges a similar shortcoming here, arguing that CLF lacks standing because its complaint fails to identify a particular member or members who were harmed by its activities at the facilities.

If the court had examined only the Complaint in isolation, it might have found Continental's argument meritorious, as the complaint alleges only that "CLF members use and enjoy New England's waterways," and that Continental's alleged discharges into the Soucook and Merrimack Rivers "adversely affect CLF members' use and enjoyment of those water resources."[4]  Such general language would appear to lead to the same result as in AVX Corp., but, as noted above, CLF has submitted the declarations of three of its members -- Irwin, Hok and Feigl --

---

[4] Complaint (doc. no. 1) at ¶ 17.

8

who all described their personal use of the waterways at issue and how the alleged pollution impacted them.[5]

Continental argues that the court should not consider the affidavits, as considering any materials that are not part of the Complaint is procedurally improper under Fed. R. Civ. P. 12(b)(6).  But as the court has already noted, there are two problems with this argument.  First, it is not clear that Continental is even seeking to dismiss under Rule 12(b)(6). Compare Memo of Law, doc. no. 8-1 at 8 (referring to Fed. R. Civ. P. 12(b)(1)), Reply Memo, doc. no. 12 at 10 (same) with Reply Memo, doc. no. 12 at 7 (citing Rule 12(b)(6)).  Second, and even more importantly, as the court noted above, the Court of Appeals has indicated that such affidavits are permissible even in the 12(b)(6) context when standing is at issue.  See supra, n.3.  Continental does not contest the substantive sufficiency of the affidavits.[6]

_____

[5] At oral argument, counsel for CLF contended that the Complaint was sufficient as written.  The court declines to reach that issue.

[6] In a footnote within its reply memo, Continental says only that "[t]he sufficiency of the affidavits themselves is subject to question" and that Continental will address the issue if the affidavits "are ever properly presented."  Reply (doc. no. 12) at 7, n.2.  It is not for Continental to decide when evidence is properly before the court.  Indeed, the court does so with this Order.  See supra, n.3; infra, p. 10.  Continental's deliberate decision to refrain from challenging the sufficiency of the

Continental additionally argues that the court should disregard the declarations and instead require CLF to file an amended complaint with the members' allegations contained therein.[7]  During oral argument, Continental suggested that "Justice Blackmun's concurring opinion" in Sierra Club, supra, requires a plaintiff in CLF's position to move to amend its complaint.  There are at least two related shortcomings to Continental's argument.  The first is that Justice Blackmun dissented in Sierra Club.  405 U.S. at 755.  While the court assumes this was simply an oversight, it is significant because, secondly, the majority in Sierra Club found that the plaintiff

---

declarations amounts to a failure to make such a challenge in the motion at bar.  The court also rejects Continental's attempt to resurrect the issue at oral argument.  See Exeter Hosp. v. New Eng. Homes, Inc. 2011 DNH 135, 10, n.4 ("This court generally will not consider theories raised for the first time at oral argument, out of fairness to adverse parties and the court.").  Continental's statement in its reply that it chose not to challenge the sufficiency of the affidavits is also at odds with its assertion at oral argument that it had no legitimate opportunity to respond to them.  As noted, the record clearly reflects that that decision was a choice.


[7] Continental suggests that CLF would be unable to amend its complaint in conformity with Fed. R. Civ. P. 15 because stormwater pollution prevention plans it provided to CLF during the notice period conclusively demonstrate that Continental is in compliance with the Act.  Such plans, however, go to the merits of the case and not to the standing issue before the court.

lacked standing because it failed to allege "in the <u>pleadings or</u> <u>affidavits</u>" that its members used the land in question.  405 U.S. at 735 (emphasis added).  The clear import of this language is that affidavits would have been acceptable to establish standing.

Continental also argues that Summers v. Earth Island Inst., 555 U.S. 488 (2009) requires the court to reject plaintiff's affidavits in favor of requiring an amended complaint. Summers does not support Continental's position.  The Court in Summers rejected plaintiff's affidavits because they either related to claims that had already been resolved, or because they were substantively deficient.  Id. at 494-96.  Once again, as in Sierra Club, there is no indication of any per se rule against the court accepting affidavits from an environmental organization seeking to establish standing.  Indeed, the substantive analyses of the affidavits in these cases suggests the opposite.  Accordingly, the court finds that the affidavits from the CLF members are sufficient at this stage of the litigation to establish that they have suffered an actual injury, thereby conferring standing on CLF.  See Laidlaw, 528 U.S. at 180.[8]

---

[8] Continental also briefly argues that CLF has failed to allege any causal connection connecting its actions to the claimed

IV.   **Conclusion**

Defendant's motion to dismiss[9] is DENIED.[10]

**SO ORDERED.**

_____
Joseph N. Laplante
United States District

Dated:  December 6, 2016

cc:  Zachary Knox Griefen, Esq.
     Mark C. Rouvalis, Esq.
     Rebecca M. Walkley, Esq.

---

injuries.  This argument, however, depends on the court
disregarding the CLF members' declarations.  Having already
ruled that the declarations are permissibly before the court,
Continental's argument fails.

[9] Doc. no. 8.

[10] Given the denial of defendant's motion the court also denies
Continental's request for attorney's fees.