UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| | ) | |
| Conservation Law Foundation, Inc. | ) | |
| | ) | Case No. 1:16-cv-00339-PB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Consent Decree |
| Continental Paving, Inc. | ) | |
| d/b/a Concord Sand & Gravel | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on July 25 20, 2016, against Continental Paving, Inc., d/b/a Concord Sand and Gravel ("Defendant" or "Continental Paving"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq*., (the "Clean Water Act") and seeking  declaratory and injunctive relief, civil penalties, and attorneys' fees and costs;

WHEREAS, Continental Paving owns and operates a construction sand and gravel facility having an address at 320 Sheep Davis Rd., Concord, NH 03301 (the "Concord Facility") and a construction sand and gravel and asphalt paving mixtures facility having an address at 822 Ricker Rd., Pembroke, NH 03275 (the "Pembroke Facility") (collectively, the "Facilities") the Facilities being operated under the trade name of Concord Sand & Gravel;

WHEREAS, CLF has alleged that the Facilities discharge stormwater and process wastewater to the Soucook River, which flows into the Merrimack River;

WHEREAS, CLF has alleged in its complaint (the "Complaint") and in a letter dated May 25, 2016, sent to Continental Paving and others (the "CLF Letter"), that Continental Paving has violated and continues to violate Section 505 of the Federal Clean Water Act  ("CWA" or "Act"), 33 U.S.C. § 1365(a);

WHEREAS, Continental Paving generally denies the allegations set forth in the Complaint and the CLF Letter and specifically denies that it has discharged or is discharging stormwater and process wastewater from the Facilities into the Soucook River, which flows into the Merrimack River and has agreed to prevent any future discharges of stormwater and process wastewater unless such discharges are covered under and in accordance with a Clean Water Act discharge permit;

WHEREAS, notwithstanding its denial of discharges, for purposes of resolution of this action, Continental Paving has agreed to apply for and comply with a stormwater discharge permit for the Concord Facility and has begun to develop and implement an engineered stormwater pollution prevention plan in support of that permit application and notwithstanding

1

its allegations set forth in the Complaint and CLF Letter, CLF has agreed to waive and dismiss with prejudice its claims against Continental Paving which are set forth in the Complaint regarding the Pembroke Facility;

WHEREAS, CLF is a regional, nonprofit environmental organization; and

WHEREAS, CLF and Continental Paving (collectively, "the Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Continental Paving of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

## I.     JURISDICTION AND VENUE

1.      Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction).   An actual, justiciable controversy exists between Plaintiff and Defendant.    The requested relief is proper under  28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2.      Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred Concord and Pembroke, New Hampshire, which are located  within this judicial district.

## II.    COMPLIANCE PROGRAM

3.      Within ninety (90) days of the date on which the Court enters this consent decree (the date on which the Court enters this consent decree is the "Effective Date"), Defendant shall obtain and maintain coverage under the United States  Environmental Protection Agency ("EPA") National Pollutant Discharge Elimination  System ("NPDES") 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("MSGP") for the Concord Facility and shall prevent all process wastewater discharges to waters of the United States from the Concord Facility unless those process water discharges are covered by and in accordance with the conditions of an individual NPDES permit. Neither the Concord Facility nor the Defendant shall discharge pollutants to waters of the United States from the Concord Facility except in compliance with applicable federal and state statutes, regulations and permits. Defendant and the Concord Facility shall comply with the Clean Water Act.

## III.   MONITORING PROGRAM

4.      Defendant shall monitor and sample its stormwater runoff pursuant to the MSGP for pollutants identified in the  MSGP for Sector J (i.e.,  Total Suspended Solids and Nitrate plus Nitrate Nitrogen) commencing on the Effective Date. This monitoring  must be performed at

each discharge location pursuant to the requirements of the MSGP.

5.      Defendant shall also comply with all other inspection and monitoring requirements of the MSGP including, but not limited to, those of Part 3 including, but not limited to, the in-house inspection of control structures and storage areas after rain events.

6.      Defendant may take additional samples of its stormwater discharges without any required reporting.

7.      During the first year after the Effective Date of this Decree, Defendant shall implement additional control measures, if any, and/or maintain control measures at the Concord Facility as necessary to meet the benchmark levels for MSGP Sector J (i.e., Total Suspended Solids and Nitrate plus Nitrite Nitrogen). If, after the end of twelve (12) months from the Effective Date of this Decree, Continental Paving's quarterly monitoring results for any parameter exceed MSGP Part 8.J benchmark levels, Continental Paving agrees to pay stipulated additional Supplemental Environmental Project payments as set forth in Paragraph 12 of this Decree. Such stipulated additional Supplemental Environmental Project payments shall be calculated based on the number of monitoring parameters exceeded during a quarterly monitoring event, not on the number of discharge locations where a monitoring parameter is exceeded (*i.e.*, an exceedance of the TSS monitoring parameter at three separate discharge locations sampled during one quarterly monitoring event shall result in one stipulated additional Supplemental Environmental Project payment, rather than three).

8.      During the life of the Decree, CLF, at its own cost and expense, through representatives, may conduct one (1) site inspection every year at the Concord Facility. The site inspection shall occur during normal business hours and upon two (2) days prior notice including notice to Defendant. During the site inspection, CLF representatives may collect water and soil samples, take photos at the Concord Facility, and monitor compliance with the MSGP and the Decree. Any such samples shall be split samples with one of the split samples remaining in the possession of Defendant.

9.      During the life of the Decree, Defendant shall copy CLF on all documents  related to stormwater quality or Clean Water Act compliance regarding the Concord Facility submitted to the EPA or NHDES (including lab reports). Such documents  shall be provided to CLF within ten days of being sent to the agencies.

## IV.    SUPPLEMENTAL ENVIRONMENTAL PROJECT

10.     Within forty-five (45) days of the Effective Date, Defendant shall make a Supplemental Environmental Project ("SEP") payment totaling twenty-five thousand dollars ($25,000) to the Conservation Fund for the environmental protection and restoration of, or other environmental benefit to, the Merrimack River Watershed, more specifically to assist the Fund in its efforts to obtain permanent protections for the Beebe River subwatershed (Beebe River Conservation Initiative # 26228). Defendant shall notify CLF in writing when the SEP payment is made and provide a copy of the check.

11.     For each missed deadline included in this Decree, excluding missed payment deadlines (discussed in Paragraph 15 below), Defendant shall make an additional SEP payment

to the Conservation Fund in the amount of five hundred ($500) for the environmental protection and restoration of, or other environmental benefit to, the Merrimack River Watershed. Payment of each such additional amount shall be due fourteen (14) days following each missed deadline. Defendant shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 35, below, Defendant shall not be required to make such additional SEP payment for missed deadlines arising from a Force Majeure event.

12.     For each exceedance of an MSGP benchmark as described in Paragraph 7 of the Decree, above, Defendant will make an additional SEP payment to the Conservation Fund in the amount of five hundred dollars ($500 for the environmental protection and restoration of, or other environmental benefit to, the Merrimack River Watershed.  Payment of each such additional amount  shall be due fourteen (14) days following each exceedance. Provided, however, that no additional SEP payment shall be due for any exceedance of an MSGP benchmark revealed within the first twelve (12) months following the Effective Date.

13.     None of the SEP payments shall be disbursed to CLF.

## V.     LIQUIDATED ATTORNEY FEES AND COSTS

14.     Within forty-five (45) days of the Effective Date, Defendant shall  pay to CLF a total sum of thirty thousand dollars ($30,000) as full and complete satisfaction of CLF's claim for attorneys' fees and costs incurred to date in this matter and for reasonable anticipated costs to be incurred in conducting a site inspection and other compliance monitoring.

15.     In the event that any payment owed by Defendant under the Decree is not made on or before the due date, Defendant shall be deemed in default of its obligations under  this Decree.  In addition to a continued requirement to make said payment, Defendant shall pay to CLF liquidated attorney fees of five hundred dollars ($500) for every day that  a payment is late.

## VI.     EFFECT OF DECREE

16.     The portion of the Complaint as to the Pembroke Facility is dismissed with prejudice and CLF agrees.  Further, CLF covenants not to sue and releases and discharges Continental Paving (and its subsidiaries, officers, directors, shareholders,  representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who  have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney's fees, past and future costs, or any other claim or relief (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Concord Facility or Pembroke Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged, or could have been alleged, in the Complaint; (iii) for the past conduct alleged to constitute violations in the CLF letters to Defendant dated May 25, 2016; and (iv) for past violations alleged in any CLF correspondence to Continental Paving dated prior to the date the Court enters this Decree concerning Continental Paving's Facilities and operations. Notwithstanding anything to the contrary contained herein, CLF retains all rights necessary to enforce the terms of this Decree, including by the filing of a lawsuit.

17.     Defendant Continental Paving covenants not to sue and releases and discharges

4

CLF (and its subsidiaries, officers, directors, trustees,  representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who  have held positions in the past) from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with CLF's investigation of and actions regarding Continental Paving.

18.    Neither this Decree, nor terms thereof, nor performance of the terms thereunder by Defendant shall constitute or be construed as an admission or acknowledgment by  Defendant of the factual or legal assertions contained in this Decree or in the Complaint or in the CLF Letter, and Defendant retains the right to controvert in any subsequent proceedings,  other than proceedings for the purpose of implementing or enforcing this Decree, the  validity of the facts or determinations contained in this Decree or the Complaint or the CLF Letter.  Neither  this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute  or be construed as an admission or acknowledgment by Defendant of any liability, or an  admission of violation of any law, by Defendant or by its officers, directors, employees,  agents, successors, or assigns.

19.    CLF does not, by consent to the Decree, warrant or aver in any manner that Defendant's compliance with this Decree will constitute or result in compliance with federal or state law or regulation.  Nothing in this Decree shall be construed to affect or limit in any  way the obligation of Defendant to comply with all federal, state, and local laws and  regulations governing any activity required by this Decree.

## VII.    REVIEW AND TERM OF DECREE

20.    The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the  proposed Consent Decree by the United States Attorney General and the EPA.  Therefore, after the signing of this Decree by the Parties, the Parties shall jointly inform the Court of the Decree, and CLF shall serve copies of this  Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney  General for review, as required by 40 C.F.R. § 135.5.

21.    Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties will jointly move the Court for entry of this Decree.  This  Decree shall take effect on the date it is entered by this Court and the respective obligations and rights of the Parties hereunder shall terminate upon the following: (1) both (a) five years have passed from the Effective Date; and (b) completion of all payment obligations set forth in this Decree; or (2) the mutual agreement of the Parties.  If for any reason the Court should decline to  approve this Decree in the form presented, the Parties agree to continue negotiations in  good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII.    MODIFICATION AND ENFORCEMENT OF DECREE

22.    This Decree may be modified only upon written consent of the Parties and the approval of the Court.

23.    This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for  any

further order that may be necessary to construe, carry out, enforce compliance and/or  resolve any dispute regarding the terms or conditions of this Decree.  If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and any Party may institute a new action in the United States District Court for the District of New Hampshire concerning their respective rights and obligations under this Decree.

## IX.    MISCELLANEOUS PROVISIONS

24.    This Decree shall remain in effect if Defendant relocates the Facility to a different location.

25.    Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if Continental Paving ceases to be the operator of the Facility, regardless of whether the Facility continues to operate or not.

26.    All payments pursuant to this Decree shall be made in form of a negotiable check drawn on Defendant's account or electronically transferred funds pursuant to directions from CLF.

27.    Entire Agreement. This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

28.    Notices. Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage  prepaid, or (d) sent by a nationally recognized courier service (i.e., Federal Express) for  next-day delivery, to be confirmed in writing by such courier.  Notices shall be directed  to the Parties at their respective addresses set forth below. Notices given in the foregoing  manner shall be deemed given when (a) sent via email, (b) actually received or refused by  the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual  delivery as shown by the addressee's registered or certified mail receipt or at the  expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Zachary K. Griefen, Esq.
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602
zgriefen@clf.org

Notices for Defendant shall be sent to:

Mark Y. Charbonneau, President
Continental Paving, Inc.
One Continental Drive
Londonderry, NH 03053
Fax:  (603) 487-5393

With a copy to:

Morgan A. Hollis, Esquire
Gottesman & Hollis P.A.
39 East Pearl Street
Nashua, NH 03060-3407
mhollis@nh-lawyers.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

29.     Authorization.  Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

30.     Successors and Assigns.  This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

31.     Interpretation.  The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

32.     Headings.  The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

33.     Counterparts.  Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes.  Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in counterparts.

34.     Severability.  In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

35.     Force Majeure. For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendant, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 10, 14, and 15 of this Decree, notwithstanding Defendant's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendant complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendant's financial difficulty in performing such work and acts or omissions attributable to Defendant's

contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Defendant shall notify CLF, at the address specified in Paragraph 28 above, within three (3) business days after Defendant first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendant to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendant the Facility can continue to operate in a manner which will not violate this Decree.

If CLF agrees that a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

**REMAINING PAGE INTENTIONALLY BLANK**

8

**CONSERVATION LAW FOUNDATION, INC.**

By: <u>/s/ Christopher M. Kilian</u>   Date: <u>1/27/2017</u>
Christopher M. Kilian, Vice President
Conservation Law Foundation
15 East State Street, Suite 4
Montpelier, VT 05602

**CONTINENTAL PAVING, INC.**

By: <u>/s/ Mark Y. Charbonneau</u>   Date: <u>1/19/2017</u>
Mark Y. Charbonneau, President
Continental Paving, Inc.
One Continental Drive
Londonderry, NH 03053

ENTERED and DATED this <u>17</u> day of <u>MARCH</u>, 2017

<u>/s/ Paul Barbadoro</u>

Honorable <u>Paul Barbadoro</u>
United States District Judge

9